**THATCHER et, Plaintiff, v. HOGAN et, Defendants.**

Common Pleas Court, Montgomery County.

No. 105535.   Decided April 1, 1954.

36

Couglin, Ogier & Lloyd, for plaintiff.
Herbert S. Beane, City Atty., M. J. Gilbert, Dayton, for defendants.

## OPINION
By McBRIDE, J.:

The plaintiff claims that he has been eligible to participate in the fireman's pension fund since March 24, 1930, as a member of the Division of Fire and seeks an order requiring the Pension Board to make statutory deductions from his salary. The requested separate finding of facts is incorporated in the decision, a copy of which is ordered filed.

Separate Finding of Facts

The Charter of the City of Dayton, adopted in 1913, provides for five separate departments, one of which is the De-

partment of Public Safety. Section 52 of the Charter provides that "The Commission may by ordinance discontinue any department and determine, combine, and distribute the functions and duties of departments and subdivisions thereof."

Section 72 provides that "The Fire Chief shall have exclusive control of the stationing and transfer of all firemen and other officers and employees constituting the fire force under such rules and regulations as the Director of Public Safety may prescribe. The fire force shall be composed of a chief and such other officers, firemen and employees as the City Manager may determine."

Section 48 (b) of the Charter provides:

"The powers and duties of the city manager shall be: . . . (b) To appoint and, except as herein provided, remove all directors of the departments and all subordinate officers and employees in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and to be subject to the civil service provisions of this charter; . . . ."

Prior to December 31, 1930, fire alarms, telegraph and traffic signals were handled by a separate bureau under the supervision of the Division of Fire. On December 31, 1930, the Commission of the City of Dayton adopted Ordinance No. 14394 providing for three divisions in the Department of Public Safety, Police, Fire and Telegraphs and Signals. The ordinance provided that "The Division of Telegraphs and Signals shall have the control and management of the Fire Alarm Telegraph and Police Signal Systems and the Traffic Signal Light and Systems and all electrical appliance and things necessary and appurtenant to said telegraph or signal systems, or signal lights or systems, or any of them." Section 4 of the ordinance provided: "In organizing the Division of Telegraphs and Signals, and maintaining said division thereafter, the Director of Public Safety shall have the power to detail members from either the Division of Police or the Division of Fire, who are technically qualified to assume positions in the Division of Telegraphs and Signals, and any such transfer shall not prejudice the rights of a member of either the Division of Police or the Division of Fire for pension, and time during which a member so transferred from one of these divisions actually serves in the Division of Telegraphs and Signals, for pension purposes, shall be included the same as though such member had not been transferred and had remained in the Division of Police or the Division of Fire, as the case may be." Section 5 of the ordinance abolished the Bureau of Alarms and Telegraph as a part of the Department

of Public Safety and provided that "Such of the employees therein as may be useful in the Division of Telegraphs and Signals shall be eligible, subject to the rules and regulations applicable to employees in the classified civil service, for appointment to positions in said Division of Telegraphs and Signals."

Some employees, who were originally qualified and appointed as firemen and policemen, were assigned, along with the plaintiff, to the former Bureau of Alarms and Telegraph and to the new Division of Telegraphs and Signals so established by the City of Dayton on December 31, 1930.

The court also finds that the rules and regulations of the Civil Service Board of the City of Dayton, Ohio, at all times herein in issue provided that applicants for the position of fireman in the Division of Fire shall in addition to the general requirements be "not less than twenty-one nor more than thirty-three years of age at the time of their examination" and shall meet other physical requirements specifically set forth in Rule 7 of the Civil Service Board.

The court finds that on February 26th, 1932, the trustees of the Firemen's Pension Board adopted a rule identified as Section 8 which provided that "any member of the Division of Fire who at the time of his appointment to the fire service has passed the physical examination required of the fireman shall be entitled to the rights and privileges of the Firemen's Pension Fund." This rule has been in effect in the same or similar language since that date.

Plaintiff, Raymond W. Thatcher, at the age of forty-one, was employed by the City Manager of the City of Dayton by letter as a "lineman cable splicer" on March 24th, 1930, in the Bureau of Alarms and Telegraphs, which on December 31, 1930, by ordinance, became the Division of Telegraph and Signals of the Department of Public Safety of the City of Dayton, Ohio. The plaintiff did not take a physical examination required of firemen. did not perform services or ever become a member of any fire company of the city and was never engaged in fighting fires. Plaintiff was engaged and did perform services for the installation and maintenance of fire, telegraph and traffic light systems of the city and was "On call" and did serve during disasters and second and third alarm fires for the purpose of protecting the fire. telegraph and traffic systems of the city. His emergency services included such hazards as were assumed in the performance of his regular duties and did not include those of a fireman.

The court further finds that no deductions for pension purposes were ever made from the plaintiff's salary. In 1943,

the City Manager advised him in writing that he was hired as a "civilian cable-splicer" and that since he did not take a physical examination required of firemen as required by the Pension Board, he was advised that his status was never that of a fireman.

### Finding of Law

The plaintiff relies upon an unreported decision of Judge Randall in the case of State ex rel. James G. Harkins v. Robert McClure, et al, No. 168,819 in the Common Pleas Court of Franklin County dated April 2, 1946, which was affirmed without opinion by the Court of Appeals on November 5, 1946. The pleadings, agreed statement of facts and the decision in that case were furnished the court. The Board of Trustees of the Firemen's Relief and Pension Fund adopted a motion "directing the Secretary not to deduct the 2% applicable to the Pension Fund from any civilian employee employed on and after July 1, 1943." Plaintiff was subsequently appointed as Superintendent of Fire and Police Communications and by ordinance, the City Council of Columbus, Ohio, fixed his salary and the court found "that in said ordinance the Superintendent of Fire and Police Communications was classified as a member of the Division of Fire . . . ."

Accepting the conclusion that the plaintiff was a fireman, whether from the agreed statement or other evidence we have been unable to determine, the court proceeds to resolve the principal issue:

"It is the contention of the respondents, the Board of Trustees, that the above §4612-4 GC grants them powers to determine who shall be and who shall not be permitted to participate in the fund, and that the resolution enacted by said Board heretofore referred to excluding so-called "civilian employees" was a proper exercise of the discretion so vested in them under §4612-4 GC. With this suggestion we cannot agree.

"Since the Legislature in §4377 GC specifically granted to City Council the prerogative of determining what positions shall be deemed to be included in the Fire Department, the right of the Pension Board to make such a classification is clearly excluded.

"While in recent years Administrative Boards have been clothed in wide authority in many respects, that authority to be valid must not amount to a delegation of legislative powers.

"In our opinion the grant of powers to Pension Boards be the provisions of §4612-4 GC relating to determination of qualifications of members refers to qualifications other than

the classification attempted by the resolution of the Pension Board. No doubt the Board under this section has power to make rules of general application as to physical requirements for admission to the benefits of the fund, and might enact rules, the violation of which would disqualify a member of the Fire Department from the right to participate in said fund, but in our opinion this grant of powers does not confer upon the Board the right to make an arbitrary classification of positions included in the Fire Department or Division of Fire by city ordinance whereby it excludes one from the benefits and grants to others the benefits of the fund.

"It will be noted that in the resolution passed by the Board of Trustees the words 'Civilian employee' are not defined, and no standards are set up by which it may be determined who are and who are not civilian employees of the Fire Department.

"The evidence in this case discloses that the relator assumed the same hazards as other members of the Fire Department by attending fires and taking measures to protect fire fighters by removing high-tension wires and other dangers during a fire. It was further shown that like other members of the Columbus Division of Fire the relator was subject to twenty-four hour call on duty under the Chief of the Fire Department and Safety Director.

"In conclusion, we find that the respondents constituting the Board of Trustees of the Firemen's Relief and Pension Fund, are without authority to determine who shall and who shall not be considered a member of the Division of Fire, since the power to so determine has been delegated by the Legislature of the State of Ohio to the City Council. We further find that the act of the Board of Trustees in excluding relator from his right to participate in the fund and to have deductions made from his salary as contributions to said fund was wholly without warrant of law, and an abuse of discretion, which requires us to sustain the contention of relator.

"A writ of mandamus may issue as prayed for in the petition requiring the respondents to accept deductions or payments by relator as a contributing member of the Firemen's Relief and Pension Funds as of the date of his appointment as a member of the Columbus Division of Fire, May 7, 1944."

This decision of the Common Pleas Court of Franklin County turned upon the lack of authority of the Pension Board to deny a pension to a fireman and not upon the issue in the instant case which is whether or not the plaintiff is a fireman.

It is also necessary to keep in mind that there have been

many significant changes in the laws of this state since 1930 when the plaintiff, Raymond W. Thatcher, was appointed.

It is apparent from the finding of facts that the plaintiff was not eligible, qualified or appointed as a fireman His letter of appointment by the City Manager as a "lineman-cable splicer" at the age of forty-one in 1930 without a physical examination required of firemen by the rule of the Civil Service Board of the City of Dayton eliminates as a matter of fact consideration as a fireman, a position defined and classified in civil service. Sec. 143.1 et seq, R. C. (§486-1 et seq, GC). At the time of his appointment, §4378 GC required that "the police and fire departments in every city shall be maintained under the civil service system . . . ."

However, it is urged that plaintiff was required to perform and assume the same hazards as firemen. The evidence establishes that he was obligated to respond to second and third alarm fires and that he did so many times. His duties on such occasions were primarily to protect fire and traffic light wires and cables. This included both removal or repair as the circumstances required. It is argued that the performance of these duties, which included some of the hazards assumed by firemen, justifies the court in finding that plaintiff was a fireman as a matter of law in spite of the handicaps of both fact and law which disqualify the plaintiff from holding such position in classified civil service.

The status of fireman is determined by official acts of a municipal corporation and by the law of this state relating thereto and not by any judicial interpretation of the word "fireman." It is the opinion of the court that in the absence of abuse of authority the duties and hazards of a city employee's assignments are immaterial in determining whether the relationship of fireman exists.

Plaintiff cites decisions of courts of other states in which pensions were granted to other than firemen where the employee was a member of the fire department. The Los Angeles cases were based upon provisions of a charter which defined the eligible group as "all persons duly and regularly appointed in the Fire Department under civil service rules and regulations whose duty it is to prevent or extinguish fires . . . under whatever designation they may be described in any salary or departmental ordinance." In allowing a pension for the secretary of the Board of Fire Commissioners, the court said:

"In ascertaining the intent and meaning of the Charter provisions a liberal construction should be indulged to carry out the beneficial purposes aimed at. The spirit of these provisions is to protect all members of the fire department in

the benefits which the fund insures, and they should not be narrowed by any strict or technical construction, but should be interpreted on broad principles . . ."

Giving effect to the Los Angeles Charter, the court said that "it is clear that the civil service codes and departmental classifications on which the defendants rely are immaterial," however, the facts indicate that the employee was "duly and regularly appointed under civil service." McKeag v. Board, 132 P. 2d 198. The third syllabus in that case reads:

"The Los Angeles Charter provisions governing fire department pensions may be construed consistently with ordinance defining member of fire department, so as to create a class of 'members of the fire department' to whom pensions are payable, as distinguished from other employees of the department, who are not entitled to pensions of the department, who are not entitled to pensions because not appointed under civil service rules or not under duty to prevent or extinguish fires."

See the companion case, Haas v. City of Los Angeles, 132 P 2d 201, which involved a painter-repairman who at times actually performed fire service and was similarly in a civil service status and also Knoll v. City of Los Angeles, 132 P 2d 203 in which a clerical worker who prepared statistical data on fires and who served under civil service rules was held to be eligible as within the class, defined by the Charter, whose duty it was "to prevent or extinguish fires."

In all of the cases cited, those eligible for pensions included, by charter or statutory definition, a class of employees broader than the Ohio provisions which restrict benefits to firemen. Board v. State ex rel Hyatt, 46 N. E. 2d 595; Fickett et al v. Boston Firemen's Relief Fund (1915), 107 N. E. 956.

It is argued that plaintiff's assignment to the Bureau of Alarms and Telegraph, formerly under the Division of Fire, is sufficient to make him a fireman. The statutes of Ohio and the Dayton Charter both have recognized for years that the fire department is composed of both firemen and other employees. The distinction between firemen and other skilled and unskilled employees is set forth in the civil service laws and regulations and they must be considered in determining the eligibility of any employee within the fire department to receive a pension under laws which provide for firemen and not for all members of the fire department. An Ohio statute effective August 25, 1947, provides:

"Members of the fire department means any person who receives an original appointment as a fireman from a duly established civil service eligible list, or who is appointed to a

position in a fire department pursuant to §737.22 **R. C. (§4389 GC)**, or who, on September 25, 1947, was contributing two percent of his annual salary to a fireman's relief and pension fund established pursuant to §741.02 **R. C. (§4600 GC)." Sec. 741.01 (§4615-1 GC.)**

Broadly stated, plaintiff's contention is that all employees in the fire department, employed prior to August 25, 1947, are eligible for a pension provided for firemen. To accept this position would do violence not only to the express words of the pension statutes but also to the civil service laws and rules adopted years ago establishing qualifications for the position of fireman. Employees of the Division of Fire, or a bureau of such division, are not ipso facto firemen so as to become eligible for a fireman's pension, unless first qualified and appointed as firemen as required by law.

In 1930, when plaintiff was employed, firemen were not required to contribute to their pension fund. **Sec. 4609 GC.** The statute, since amended, merely authorized the receipt of purely voluntary contributions thereby enabling each person to increase his pension. It is significant that the fund for the pension was established by a tax levy which the legislative authority was authorized to make each year ". . . . to provide funds for the payment of all pensions granted to **firemen** under existing laws." The beneficiaries of this tax were described as "firemen." **Sec. 4605 GC**, subsequently amended.

Any doubt as to plaintiff's status was removed in the instant case by the adoption of City Ordinance No. 14394 on December 31, 1930, which separated the bureau in which plaintiff initially served from that of the Division of Fire and created a distinctly new and separate division in which plaintiff was thereafter employed. Authority to make such change appears not only in Section 52 of the Charter but also in §737.08 **R. C.**, formerly §4377 **GC.**

Ordinance No. 14394 is a determination by the municipal authority that employees of the Division of Telegraphs and Signals are not members of the fire department. The express reference in Section 4 of the ordinance protecting pension rights of police and firemen detailed or transferred to the new division excludes any intention on the part of the legislative authority of the city to include members of the new division in the fire department or to grant any pension or other rights to which only firemen are otherwise eligible. This ordinance did not create any new rights. It preserved and protected such individual pension rights as existed prior to the establishment of the new division.

Where the legislative authority established by ordinance

a Division of Telegraphs and Signals separate and apart from the fire and police divisions, an employee of the new division does not become eligible for a fireman's pension unless such employee is otherwise qualified and appointed as a fireman as required by law.

Prior to the time when the General Assembly adopted the comprehensive firemen's pension program, now in effect, the trustees of the pension fund had the very broad power, under former §4612 GC, of adopting "all rules and regulations for the distribution of the fund, including the qualifications of those to whom any portion of it shall be paid . . . ." The enactment by the Board of Trustees of the Firemen's Relief and Pension Fund of the City of Dayton on February 26, 1932, when the plaintiff was not on pension, of the rule limiting the right to share in such fund to such employee, "who, at the time of his appointment, has passed the physical examination required of a fireman," was within the authority imposed upon the Pension Board, no claim being asserted and no evidence shown that such rule was unreasonable or discriminatory. The adoption of such rule is approved in the Harkins case upon which the plaintiff has placed so much reliance. However, the authority of the Board of Trustees of the Firemen's Relief and Pension Fund to adopt reasonable rules for participation in the benefits of the fund did not include authority to determine who shall and who shall not be classified as a fireman.

It is argued that if plaintiff was a fireman in 1929, the adoption in 1932 of a rule requiring a fireman's physical examination deprived this plaintiff of a vested right to a pension. Plaintiff relies upon the "vested rights" statute enacted in 1937. Sec. 4828-1 GC. This section, now §741.15 R. C. provides that the granting of a pension shall operate to vest a right in such person, to receive such pension at the rate so fixed at the time of granting such pension. It is clear that in the instant case no pension was ever granted and that the date of employment as well as the date of the adoption of the rule were prior to the enactment of this statute. Further, the right to a pension vests upon the granting of the pension by the board and not at the inception of the employment. **State ex rel. v. Hanrahan, et al, 161 Oh St 43, 52 O. O. 481.**

*      *      *      *

In conclusion, the court finds no basis either in the statutes or under the rules of the Pension Board for recognition of plaintiff's claim. The plaintiff, Raymond W. Thatcher, was never qualified or appointed as a fireman and the Trustees of the Firemen's Relief and Pension Fund properly refused to

accept deductions from his salary or other contributions to said fund on his behalf. If it is plaintiff's position that employees other than firemen deserve pension status because of occupational hazards, the relief sought relates to policy and may be granted only by legislative action. The court must determine individual rights under the law and may not create or extend privileges which require an act of the legislature for their existence as well as for their payment.

The writ of mandamus is denied.